# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

LISA BECKFORD,

      **Plaintiff,**

v.                                        **Case No. 8:16-cv-175-T-33TBM**

NANCY A. BERRYHILL, Acting
Commissioner of the United States
Social Security Administration,[1]

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits. Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed.

### I.

      Plaintiff protectively filed an application for disability insurance benefits on August 29, 2012, alleging disability as of June 4, 2012, by reason of back pain, L5-S4 compressed, and nerve damage.[2] (R. 63, 154, 165, 169). Plaintiff's application was denied originally and on

---

[1]Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as Defendant in this suit.

[2]Plaintiff also alleged depression as of October 2012. (R. 63, 178).

reconsideration.  (R. 74–75, 83–84).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. 89–92).

A *de novo* hearing was conducted by an ALJ on May 14, 2014.  Plaintiff, who was represented by counsel, testified on her own behalf.

Plaintiff testified she has not been able to work since a car accident in June 2012.  She said she has constant low back pain that travels down the outside of her right leg and to her foot, causes her leg to give out, and makes her foot feel like it is on fire.  She said her ability to lift, stand, walk, sit, and concentrate is significantly limited due to extreme pain.[3]

Plaintiff said she does not see doctors anymore because she does not have insurance.  She received a settlement amount of about $30,000 four or five months before the hearing, but used most of it to buy a car and rent a house.  According to Plaintiff, she lost two cars and her home to foreclosure after the accident, and she still was behind on everything else.  (R. 38–51).

Also before the ALJ were medical records outlining Plaintiff's medical history.  These matters are addressed herein as necessary.

By decision dated June 19, 2014, the ALJ found that while Plaintiff has severe impairments related to disorders of the spine and obesity, she nonetheless had the residual functional capacity ("RFC") to perform sedentary exertional work[4] except that she could only

---

[3]Plaintiff also testified that she went to a mental health facility because her family thought she needed counseling, but she did not go back because she was embarrassed and did not like what she was told.

[4]Sedentary work is defined as that which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. § 404.1567(a). Social Security Ruling ("SSR") 83-10 elaborates on the definition, explaining that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday,

occasionally climb, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to vibration; and must avoid even moderate exposure to hazards such as machinery and heights. Upon this finding and application of the medical-vocational guidelines, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy consistent with the guidance provided by SSR 85-15. Upon this conclusion, Plaintiff was determined to be not disabled. (R. 20–29).

The Appeals Council considered additional evidence but denied Plaintiff's request for review. (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

Entitlement to Social Security disability insurance benefits requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

The Social Security Regulations set forth a five-step sequential evaluation process the ALJ must follow in determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Under this five-step sequential evaluation, the ALJ considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or

and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

combination of impairments; (3) if so, whether the severe impairment meets or equals an impairment listed in the listing of impairments; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's age, education and work experience, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at § 404.1520(a)(4). The burden is on the claimant to prove the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains

sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff raises five claims on this appeal. As stated by Plaintiff, the ALJ erred in: (1) failing to develop the record regarding her alleged mental impairment; (2) reducing her credibility and increasing the RFC due to failure to lose weight; (3) the evaluation of medical treatment or lack thereof and the settlement of her motor vehicle accident case as symptoms, credibility and the RFC; (4) the evaluation of the opinion of Gregory A. Bronner, D.O.,[5] and (5) the evaluation of the opinion of Adam Greenfield, D.O. (Doc. 24).

Plaintiff's challenge to the ALJ's evaluation of Dr. Bronner's opinion has merit. It also reveals fundamental problems with ALJ's consideration of the medical record in general.

### A.

The medical record in this case is somewhat sparse. It is comprised of: (1) hospital records from emergency room visits that predate the auto accident,[6] and those from the day of the accident; (2) treatment notes dated June through November 2012 from Physicians Group, LLC, where Plaintiff was seen by a chiropractor and three doctors; (3) a consultative physical exam on

---

[5]The parties both refer to Dr. "Broner."

[6]Plaintiff sought treatment for an ear infection in August 2009 (R. 298), right leg pain in January 2012 (R. 233–41), and urinary problems in May 2012 (R. 253, 257–58).

October 25, 2012; (4) a form completed by a non-examining, state agency doctor on December 28, 2012; and (5) a second consultative physical exam on July 23, 2013.[7]  Pertinent portions of each are addressed.

On June 4, 2012, Plaintiff went to the emergency room complaining of right leg pain from the auto accident.  She denied back pain, numbness, and tingling.  She was discharged with a right leg contusion and medication.  (R. 274–86).

Following the accident, Plaintiff received approximately six months of coordinated care at Physicians Group, LLC.[8]  From June to November 2012, Plaintiff underwent chiropractic care and physical therapy, had an MRI of the lumbar spine, and was seen by Dr. Bronner, a family practitioner;[9] Beverly E. Eadie, D.O., a physiatrist; and Frank B. Gomes, M.D., a neurosurgeon. As recognized by the ALJ, these are the main records in this case.

Dr. Bronner treated Plaintiff on June 25, 2012;[10] July 27, 2012; October 12, 2012; and November 23, 2012.  (*See* R. 337–47, 423–35, 462–72, 513–14, 565–74).  Dr. Bronner referred Plaintiff to Dr. Eadie for pain management.  Dr. Eadie treated Plaintiff on August 20, 2012; August 28, 2012; and September 13, 2012.  (*See* R. 365–72, 380–91).  Dr. Bronner also referred Plaintiff to Dr. Gomes for a neurosurgery consultation.  Dr. Gomes examined Plaintiff on August

---

[7]There is also a mental evaluation completed by a social worker on April 4, 2014.

[8]The medical and chiropractic records from this practice are grouped together and there are many duplicates in the record.

[9]Dr. Bronner is also a Fellow, American Academy of Disability Evaluating Physicians.  (*See, e.g.*, R. 514).

[10]Dr. Bronner reported that he first treated Plaintiff on June 25, 2012.  (R. 547).  It appears that Elaine Sadeghi, ARNP, signed off on the report and Dr. Bronner initialed it.  (*See* R. 434–35).

14, 2012.[11]  (*See* R. 355–62, 393–94).  Additionally, each of these doctors expressed opinions related to Plaintiff's functional capacity and/or ability to work.

Pertinent to this appeal, Dr. Bronner provided three "opinions."

The first pertains to the whole person impairment rating he calculated for Plaintiff, pursuant to the American Medical Association Guides ("AMA Guides") to the Evaluation of Permanent Impairment, Sixth Edition, as set forth in his report dated October 12, 2012.  He reported that:

> Based upon available documentation including history and physical examinations, diagnostic evaluations, and specialty evaluations, it is my opinion that [Plaintiff] has sustained permanent injury within a reasonable degree of medical certainty in regards to the injuries sustained in the motor vehicle collision of 06/02/2012.  This permanent injury appears to be in the lumbar region with disc protrusion and lower extremity radiculitis. . . . . I calculate a 13% whole person impairment for these injuries.
>
> ***
>
> I do expect that [Plaintiff] will require future medical interventions, and at this point this appears to be surgical intervention as the best means of alleviating her symptomatologies and restoring her function.  Future costs in this regard will be deferred to the neurosurgeon accordingly.  In the meantime, [Plaintiff] will continue to limit her daily activities to tolerance.  She may do some light water walking aquatically, as long as the water is warm enough.  She will remain on a no work status of undetermined duration.

(R. 513–14).

The second pertains to Plaintiff's ability to work and physical limitations.  In a medical statement form dated January 17, 2013, Dr. Bronner opined that Plaintiff was unable to sustain

---

[11]Treatment notes from Drs. Bronner and Eadie suggested additional referrals to Dr. Gomes (*see, e.g.* R. 393, 514, 723), but I did not see any when reviewing the record.

full-time employment due to a ruptured disc causing nerve pressure into the leg.[12]  (R. 548).  As for specifics, he opined that Plaintiff could sit, stand, and walk for less than 60 minutes in a workday; lift five pounds on an occasional basis and lift no weight on a frequent basis; and never bend, stoop, or balance.[13]  (R. 547).  Also, he opined that Plaintiff's pain would frequently distract her from sustaining attention and concentration needed to perform even simple tasks, and she would likely have four or more absences a month if she had a full-time job.  (R. 548).  He concluded that Plaintiff "will most likely need surgery for any improvement."  *Id.*

The third is set forth in an addendum report dated July 11, 2014.[14]  Therein, Dr. Bronner reiterated his prior opinions, noted he last saw Plaintiff in 2012, and stated:

> To my knowledge, [Plaintiff] has not been able to undergo any type of surgical intervention, and as a result has not been able to perform any type of gainful employment.  She also has been using a cane, which in my medical opinion, is medically recommended and necessary to prevent a fall and further injury.

(R. 822).

As for Drs. Eadie and Gomes, each commented briefly on Plaintiff's physical abilities. In August 2012, Dr. Eadie opined that Plaintiff was to avoid lifting more than 20 pounds, high impact activity, and repetitive bending at the waist.  (R. 372).  In September 2012, Dr. Eadie provided a treatment plan and recommendations, opining that:

---

[12]His last two treatment notes also documented a "no work" status.  (*See, e.g.,* 471, 514, 574).

[13]He indicated "N/A" when asked about manipulative and arm limitations.  (R. 547).

[14]This report post-dates the ALJ's decision but was considered by the Appeals Council.  (*See* R. 5).

> [Plaintiff] has sustained a permanent [lumbar spine] injury
> . . . Additional lumbar epidural injections are not warranted
> based on [Plaintiff's] minimal response to the previous
> treatment. . . . [Plaintiff] should indefinitely avoid high impact
> activity, heavy lifting or repetitive bending at the waist due to
> the abnormal L5-S1 disc. . . . Weight loss would also be
> beneficial in improving [Plaintiff's] long term outcome.

(R. 392). As for Dr. Gomes, he opined that Plaintiff was "to avoid lifting, pushing or pulling over 20 lbs., as well as high impact activity, prolonged sitting or standing and overhead lifting." (R. 394).

Aside from receiving some chiropractic care in 2013 (*see, e.g.*, R. 685–700), the treatment record essentially ends here. The only other medical evidence is from the two consulting doctors and the non-examining, state agency doctor.

Thomas F. Beaman, D.O, a consulting internist, examined Plaintiff on October 25, 2012. Aside from noting reduced range of motion in the lumbar spine and lower right lumbar tender points, without spasm, his examination was essentially normal. (R. 535–40). He noted Plaintiff walked with a cane and was reluctant to walk without it for fear of falling, but he was unable to ascertain whether the cane was medically necessary. *Id.* at 539–40. His impression was chronic lumbar pain with right radiculopathy, no evidence of motor or neurological deficit. *Id.* at 540. He did not address Plaintiff's functional capacity or limitations.

Minal Krishnamurthy, M.D., a non-examining, state agency doctor, completed the medical portion of the SSA's disability determination on reconsideration on December 28, 2012. He opined that Plaintiff retained the functional capacity to occasionally lift 20 pounds and frequently lift 10 pounds, stand and/or walk for 2 hours out of an 8-hour workday, and sit for 6 hours out of an 8-hour workday. (R. 67). He also found that Plaintiff could only occasionally

climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and had to avoid even moderate exposure to hazards. *Id.* at 67–68.

Lastly, Adam Greenfield, D.O., a consulting general practitioner, examined Plaintiff on July 23, 2013. He noted Plaintiff had spasms and tenderness in the lumbar region,[15] decreased range of motion in the lumbar spine, decreased range of motion in the lower extremities, and deep tendon reflexes +2/4 of upper and lower extremities.[16] Other findings on exam were normal. (R. 678–79). Dr. Greenfield also completed a medical statement form, opining that Plaintiff was unable to sustain full-time employment due to a herniated disc causing severe pain and spasms. (R. 680–81). He identified numerous restrictions, including, among other things, that Plaintiff could work one hour per day; sit, stand, and walk for less than 60 minutes in a workday; lift five pounds on an occasional basis and no weight on a frequent basis; never bend, stoop, or balance;[17] never use her right hand for gross manipulation; never raise her left arm above shoulder level; never work around dangerous equipment; occasionally use her hands for fine manipulation; and occasionally raise her right arm above shoulder level. *Id.* Also, he opined that Plaintiff's pain would frequently distract her from sustaining attention and concentration needed to perform even simple tasks, and she would likely have four or more absences a month if she had a full-time job. *Id.* at 681.

_____

[15]Dr. Greenfield twice noted spasms and tenderness in the lumbar spine (R. 678–79), but once noted Plaintiff did "not have any muscle spasms with tenderness." (*See* R. 679).

[16]Deep tendon reflexes graded 2+ are normal and those graded 4+ are always abnormal. *See* https://www.ncbi.nlm.nih.gov/books/NBK396/ (last visited Aug. 8, 2017).

[17]He opined that a cane was medically required for balance. (R. 680).

**B.**

The ALJ addressed the medical opinions, finding that most of them were entitled to little or no weight.

The ALJ gave "little weight" to Dr. Bronner's opinion that Plaintiff had a 13% impairment rating and "no weight" to the opinion expressed in his medical statement. (R. 25–26). With regard to the impairment rating, the ALJ explained:

> Yet, he advised that the claimant was on a "no work status of undetermined duration." Such an opinion does not follow the standards of disability used by the [SSA], and therefore, sheds little light on Dr. Bronner's opinion regarding the claimant's functional abilities. Certainly, a reduction to sedentary work accommodates someone with only 13 percent impairment rating, and therefore, would not equate to a "no work status." As this opinion does not address the claimant's functional limitations, it conclusory in nature.

(R. 25). With regard to Dr. Bronner's medical statement opinion, the ALJ found that "overall," it "appear[ed] overstated, exaggerated, and unsupported by any medical evidence (Exh. 8F, 11F)."[18] (R. 25). She also found it "curious" that his opinion included limitations for "postural or manipulative activities, including no fine or gross manipulation with the hands," given the complete lack of symptoms, complaints, or medical findings related to Plaintiff's upper extremities. (R. 25–26).

The ALJ gave "some weight" to Dr. Eadie's opinion that Plaintiff should avoid high impact activity, heaving lifting, and repetitive bending at the waist. The ALJ explained that although the opinion was "rather vague," it was generally consistent with the medical evidence

---

[18]These exhibits are Dr. Bronner's medical statement. (*See* R. 546–48, 682–84).

and with her own RFC assessment for sedentary work, and Dr. Eadie was a treating source. (R. 25).

The ALJ gave "little weight" to Dr. Gomes's opinion that Plaintiff should avoid lifting, pushing, or pulling over 20 pounds; high impact activity, prolonged sitting and standing; and overhead reaching. She reasoned that:

> While the [RFC she assessed] accommodates the majority of these limitations, and in fact, restricts the claimant even further, the record contains very little evidence to support any manipulative limitations such as reduced overhead reaching. Moreover, limitations to avoid prolonged sitting and standing are inherently vague and contain little probative value in determining the claimant's functional limitations.

(R. 25).

The ALJ recounted Dr. Beaman's findings on examination. She did not explicitly state what weight, if any, that she gave to his findings or opinion. She concluded only that his examination "supports relatively few functional limitations." (R. 26).

The ALJ gave "great weight" to Dr. Krishnamurthy's opinion that Plaintiff retained the RFC to perform "light" work[19] with some postural and environmental restrictions, explaining that he was an "impartial licensed physician" familiar with the SSA's disability requirements, he had the opportunity to review Plaintiff's medical files, his opinion was consistent with the record as a whole, and state agency medical consultants generally are highly qualified physicians and considered experts in evaluating medical issues in disability cases. However, "out of an

---

[19]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

abundance of caution," the ALJ "reduced the exertional requirements to sedentary work." (R. 27).

The ALJ gave "little weight" to Dr. Greenfield's opinion on Plaintiff's functional limitations and ability to work, explaining that:

> this opinion limited the claimant's abilities more strictly than what his examination findings support. In other words, this opinion is contradicted by the generally normal physical examination findings. For example, the examination report indicates negative straight leg raises, full muscle strength, and no muscle spasms or gross motor or sensory deficits. Yet, Dr. Greenberg opined that the claimant was unable to work more than three hours per day. Certainly, the undersigned would have credited the doctor's opinion if the clinical findings were consistent. However, in this case, they were not. Nevertheless, the undersigned does not find that these inconsistencies devalue the doctor's objective findings, which are consistent with the [RFC] detailed above.

(R. 26).

## C.

On thorough consideration of the administrative record, I am unable to find that the ALJ fully and fairly evaluated the opinions of Dr. Bronner and those of the other treating, examining, and nonexamining doctors. The decision contains omissions and misstatements of material evidence, thereby making it impossible to ascertain whether substantial evidence supports the ALJ's decision to discount opinion evidence by treating or examining sources. For similar reasons, it also is impossible to determine whether the ALJ applied the correct legal standards in addressing Dr. Bronner's opinion evidence and the other medical opinions of record. In these circumstances, a remand is required. *See Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (providing that a remand for clarification is required if the reviewing

court is unable to determine from the decision that the proper legal standards were applied) (citations omitted); *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986) (failing to apply the correct legal standards or to provide the reviewing court with a sufficient basis on which to determine that the correct legal principles have been followed or that substantial evidence exists mandates a reversal) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)).

Beginning with Dr. Bronner, Plaintiff argues broadly that the ALJ erred in evaluating the doctor's "opinion." She notes the ALJ rejected the doctor's opinion in large part because he assigned a 13% permanent impairment rating under the AMA Guides and because the impairment rating was inconsistent with being on no-work status and consistent with the ability to perform sedentary work. Plaintiff's contends the ALJ's findings "evince[] a total misunderstanding about permanent impairment ratings and their relationship to the question of disability." In her view, a 13% impairment rating supports Dr. Bronner's conclusions and renders the ALJ's findings related to Dr. Bronner unsupported by substantial evidence. (Doc. 24 at 12–15).

In response, the Commissioner contends the ALJ properly evaluated Dr. Bronner's opinion regarding Plaintiff's whole person impairment rating because it did not conform to SSA standards, said little about the doctor's opinion on Plaintiff's functional limitations, and was inconsistent with his opinion that Plaintiff remain in a no work status. Further, the Commissioner notes that Dr. Bronner's opinions were not entitled to any special deference because he was not a treating source. (Doc. 25 at 14–15).

As an initial matter, I cannot conclude that the ALJ applied the correct legal standards with respect to evaluating Dr. Bronner's opinions. The ALJ and the Commissioner both failed to acknowledge Dr. Bronner as a treating source. Dr. Bronner saw Plaintiff at least four times

over a five or six-month period. He initiated a treatment plan, completed treatment notes, made referrals to specialists, made findings largely consistent with the other medical evidence of record, and appears to be the person responsible for overseeing Plaintiff's care at Physician's Group, LLC.[20] On this record, there is no evidence to suggest that the relationship between he and Plaintiff deviated in any way from accepted medical practice. Under these circumstances, Dr. Bronner is a treating physician under this circuit's case law and the regulations. *See Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008) ("There is no basis in law, or reason, for concluding that a physician who examined a patient four times over a two-month period should not be given the weight accorded a treating physician. Plainly, the four examinations would provide the physician with ample opportunity to accurately evaluate a patient."); *Poplardo v. Astrue*, No. 3:06-cv-1101-J-MCR, 2008 WL 68593, at *11 (M.D. Fla. Jan. 4, 2008) (rejecting ALJ's reason for discounting physician's opinions based on a "limited" treating relationship where the plaintiff's four visits constituted a substantial treating relationship in that the visits included treatment notes and no evidence existed that the physician deviated from accepted medical practice); *Cronon v. Barnhart,* 244 F. Supp. 2d 1286, 1293 n. 21 (N.D. Ala. 2003) (finding that orthopedist who examined plaintiff three times qualified as a treating physician).

Because Dr. Bronner was a treating doctor, his opinions were entitled to substantial or considerable weight absent "good cause." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation and citations omitted). There is no evidence to suggest the ALJ

---

[20]It is unclear whether the ALJ or Commissioner recognized that Drs. Bronner, Eadie, and Gomes, as well as the chiropractor(s), all provided coordinated care through Physician's Group, LLC.

applied this standard when evaluating Dr. Bronner's opinions. Consequently, a remand is required on this ground alone. *See Keeton*, 21 F.3d at 1066; *Gibson*, 779 F.2d at 622.

Even assuming, for the sake of argument, that the ALJ applied the proper legal standard when evaluating Dr. Bronner's opinions, I cannot conclude that substantial evidence supports the ALJ's findings on the same.[21] With regard to the ALJ's discussion of the 13% permanent impairment rating assigned by Dr. Bronner, I note that she does not challenge its validity. And, her finding that such a rating does not follow the SSA's standards of disability or speak to functional limitations is not disputed. The discussion becomes muddied, however, when the ALJ finds it inconsistent with Dr. Bronner's opinion that Plaintiff was on a "no work status of undetermined duration,"[22] and consistent with her RFC assessment of sedentary work. There simply is no record support for these conclusions. Indeed, these conclusions are inconsistent with the ALJ's initial findings on ratings under the AMA Guides. If an impairment rating does not speak to functional limitations or disability, without further explanation of ratings under the AMA Guides it does not necessarily follow that the impairment rating is inconsistent with the

---

[21]The Commissioner appears to take a narrow reading of Plaintiff's argument. In her view, Plaintiff is challenges the ALJ's evaluation of Dr. Bronner's "opinion" regarding the permanent impairment rating and "opinion" that Plaintiff was to be on a no-work status. I disagree. Plaintiff alleges (1) the permanent impairment rating was a "significant reason" the ALJ rejected Dr. Bronner's opinion, (2) the ALJ misunderstood the import of the permanent impairment rating, and (3) in light of that misunderstanding, the permanent impairment rating does not provide support for the ALJ's rejection of Dr. Bronner's opinion(s) or for the ALJ's RFC for sedentary work.

[22]A treating doctor's opinion that a claimant is unable to work is not a "medical opinion" as defined by the regulations; rather, it is an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Where the record contains such an opinion, the ALJ must evaluate all the evidence to determine the extent that it is supportable by the record, but an opinion that a claimant is unable to work is never entitled to controlling weight or special significance. *See id.*; SSR 96-5p, 1996 WL 374183, at *5 (S.S.A. July 2, 1996).

ability to work or that it is consistent with the performance of sedentary work. As such, to the extent the ALJ relied on the same in rejecting Dr. Bronner's medical statement opinion, it does not provide support for doing so.[23]

With regard to the ALJ's evaluation of Dr. Bronner's opinion on Plaintiff's limitations, it too is problematic. First, the ALJ did not address the opinion in its entirety. While an ALJ is not required to address every piece of record evidence, *see Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), an ALJ is required to address evidence which contradicts his or her own findings. *See Broughton v. Heckler,* 776 F.2d 960, 961 (11th Cir.1985) (providing that an ALJ's failure to mention or consider contrary medical records, let alone articulate reasons for disregarding them, is reversible error). Here, the ALJ did not mention Dr. Bronner's opinion that Plaintiff's symptoms would likely result in four or more absences from work per month, and that her severe pain would distract her from sustaining the attention and concentration needed to perform even simple tasks. This omission is significant. The opinion contradicts the ALJ's RFC findings and is consistent with Dr. Greenfield's opinion. Dr. Greenfield identified the same limitations, but the ALJ failed to mention that as well. The ALJ also failed to mention Dr. Bronner's opinion that Plaintiff would most likely need surgery to improve her level of functioning.

---

[23]The AMA Guides to the Evaluation of Permanent Impairment "do not distinguish between impairment and disability and their impairment ratings 'are not correlated in any way with the social security disability program.'" *Carson v. Barnhart*, 242 F. Supp. 2d 33, 39 n.6 (D. Maine 2002) (quoting *Begley v. Sullivan,* 1990 WL 113557, at *2 n.1 (6th Cir. Aug. 8, 1990)). As such, it is proper for an ALJ to consider a doctor's opinion as to a claimant's whole person impairment rating under the AMA Guides "as a pertinent piece of medical evidence and not evidence that was outcome determinative." *Begley*, 1990 WL at *2 n.1.

Second, the ALJ's reasons for rejecting Dr. Bronner's opinion in its entirety are not supported by substantial evidence. The first reason given is simply incorrect. Contrary to the ALJ's assertion that Dr. Bronner credited Plaintiff with hand and arm-related limitations (R. 25), he indicated that such limitations were "N/A." (R. 547). The second reason is conclusory, not entirely accurate, and is dependent on the ALJ's consideration of the other medical evidence. Absent a full and fair review of the medical evidence, it is not possible to determine whether substantial evidence supports the finding that Dr. Bronner's opinion is "overstated, exaggerated, and unsupported by any medical evidence."

The record also reveals several instances—not specifically mentioned by Plaintiff—in which the ALJ misstated, mischaracterized, or failed to address certain aspects of the medical evidence. For example, although the ALJ noted the MRI showed disc bulging at L4-5 and L5-S1 (R. 24), Dr. Bronner's and Dr. Eadie's review of the MRI noted other significant findings as well. (*See* R. 370, 391, 513). Additionally, their diagnostic impressions, which went unmentioned in the decision, went beyond and were more specific than the ALJ's finding of "disorders of the spine." (*Compare* R. 370, 391, 513 *with* R. 22). Another example pertains to an epidural steroid injection Plaintiff received. The ALJ found that Plaintiff's testimony that it did not help was directly contradicted by the medical evidence. (R. 24). That is not entirely accurate. While Plaintiff reported that the burning in her right foot had significantly improved after the injection, both Drs. Eadie and Bronner noted that the injection was not of significant benefit because Plaintiff's low back and leg pain were unchanged.[24] (R. 391, 513). As indicated above, the ALJ

___

[24]Other examples include (1) the ALJ's statement that consultative examinations were ordered "due to the lack of *reliable* medical findings," but in October 2012 it was noted in the SSA's case development records that one was needed because Plaintiff "only sees chiro"(R. 541); (2) the ALJ's finding that Plaintiff's symptoms and impairments were present prior to

also failed to recognize Dr. Bronner as a treating doctor, that his care was coordinated with that of Drs. Eadie and Gomes, and that Dr. Eadie was a pain management specialist and Dr. Gomes was a neurosurgeon.  While these and other examples may be insignificant on their own, when considered in total they serve only to undermine the ALJ's decision and call into question its accuracy and her partiality.

Another significant example of the ALJ's failure to consider the record with adequate care involves her consideration of the medical opinions of Drs. Gomes and Krishnamurthy. Significant to her consideration of Dr. Gomes's opinion, the ALJ rejected his opinion that Plaintiff avoid prolonged sitting and standing because it was vague and had "little probative value in determining [Plaintiff's] functional limitations." (R. 25).  While Dr. Gomes's opinion was not entitled to great or considerable weight since it appears he may have seen Plaintiff only once, the avoidance of prolonged sitting and standing clearly is inconsistent with the ability to perform the full range of sedentary work and typically precludes using the grids for decision.  While the term "prolonged" is left undefined, the SSA recognizes that, by definition, sedentary exertional work involves "prolonged" sitting.  *See* SSR 83-12, 1983 WL 31253, at *4 (S.S.A. Jan. 1, 1983) (recognizing that an individual who "must alternate periods of sitting and standing . . . is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work"). The ALJ's reason for rejecting Dr. Gomes's opinion that Plaintiff avoid overhead lifting is also

the alleged date because she went to the emergency room earlier that year with complaints of leg pain; and (3) the ALJ's finding that Dr. Eadie's statement that "weight loss would also be beneficial to improving [Plaintiff's] long term outcome" (R. 393) constituted "prescribed treatment that could restore one's ability to work," and that Plaintiff was less credible because she failed to follow the same because "there appears to be no evidence of any attempt by [her] to lose weight."  (R. 25).

unsupported. Such a limitation is not uncommon where there is a low back impairment. The ALJ's stated reasons for rejecting these aspects of Dr. Gomes's opinion are not supported by substantial evidence.

Finally, it is worth noting that the ALJ credited the nonexamining doctor's opinion over those of the treating and examining doctors. However, the reports of nonexamining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence on which to base an administrative decision. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988) (quoting *Sharfarz v. Bowen,* 825 F.2d 278, 280 (11th Cir. 1987)). Although an ALJ may rely on opinions of nonexamining sources when they do not conflict with those of examining sources, *see Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991), that does not appear to be the case here. Moreover, the ALJ fails to explain how Dr. Krishnamurthy's opinion is consistent with "the medical record as a whole." Nor does the ALJ mention that he did not review the complete medical record. Rather, it appears he addressed/reviewed Dr. Beaman's consultative exam report, the lumbar spine MRI, and Dr. Bronner's treatment notes dated October 12, 2012.[25] (R. 65). It is unclear whether he had and reviewed Dr. Bronner's other records or those of Drs. Eadie and Gomes. However, it appears doubtful that he did because he reported "[t]here is no indication that there is medical or other opinion evidence." (R. 67).

In light of the above findings, Plaintiff's other issues need not be addressed. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).

_____

[25]As for the records from Physicians Group, LLC, he noted they were "from chiropractor." *Id.*

## IV.

While I make no finding on the ultimate issue of disability, for the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation.[26]  I further recommend that the Clerk be directed to enter Judgment in favor of Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
16th day of August 2017.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
The Honorable Virginia M. Hernandez Covington, United States District Judge
Counsel of Record

---

[26]Depending on the ALJ's findings, it may be necessary to obtain vocational expert testimony for decision.

21